# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ELLEN M. BRONSON, | 3:16-cv-00319-LRH-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff's Motion for Reversal and Remand. (ECF No. 13.) The Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal and/or Remand. (ECF Nos. 14, 15.)[1] Plaintiff filed a response to the cross-motion and reply in support of her motion. (ECF No. 17.)

After a thorough review, the court recommends that Plaintiff's motion be granted in part; the Commissioner's cross-motion be denied; and, that the action be remanded for further proceedings consistent with this Report and Recommendation.

///

///

///

---

[1] These documents are identical.

# I. BACKGROUND

On January 7 and 11, 2013, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning September 30, 2012. (Administrative Record (AR) 202-212.) The applications were denied initially and on reconsideration. (AR 119-121, 126-131.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 133-34.) ALJ Eileen Burlison held a hearing on October 21, 2014. (AR 42-72.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On January 30, 2015, the ALJ issued a decision finding Plaintiff not disabled. (AR 21-41.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-6.)

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ failed to properly account for Plaintiff's limitations resulting from her severe impairment of gastritis; (2) the ALJ did not properly explain the great weight given to the non-examining stage agency consultants over Plaintiff's treating physician; and (3) the hypothetical posed to the VE did not account for the limitations associated with Plaintiff's gastritis.

# II. STANDARD OF REVIEW

**A. Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by

isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.*

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R.. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc.*

*Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

## III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since the alleged onset date of September 30, 2012. (AR 23.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: steroid responsive arthropathy, seronegative rheumatoid arthritis, osteoarthritis, gastro-intestinal reflux disease, and gastritis. (AR 23.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 28.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except she was limited to lifting/carrying ten pounds frequently and twenty pounds occasionally; she could sit, stand, and walk for six hours each in an eight-hour workday; she could frequently balance, stoop, kneel, crouch, and crawl; she could frequently climb stairs, ladders, ropes and scaffolds; she should avoid hazards involving working at heights or operating dangerous moving machinery; she would need proximity to a restroom on occasion; she should not perform work that requires persistent visual acuity; she could understand and remember simple, detailed and complex instructions and could relate to the public, supervisors and coworkers. (AR 29.)

At step five, the ALJ relied on testimony from the VE to conclude that Plaintiff could perform past relevant work as a retail sales clerk. (AR 34-35.) The ALJ also determined that Plaintiff could perform other jobs that existed in the national economy in significant numbers including a storage facility rental clerk and cashier. (AR 35-36.) Therefore, the ALJ concluded that Plaintiff was not disabled from September 30, 2012 through the date of the decision. (AR 36.)

**B. RFC & Gastritis Limitations**

**1. Summary of Argument**

Plaintiff argues that the ALJ's RFC determination was incomplete because it did not adequately account for her functional limitations related to her gastritis. While the ALJ's RFC acknowledged the

need for additional bathroom breaks through the requirement of proximity to a bathroom, Plaintiff contends that it failed to fully consider the impact of her symptoms to the extent she would be absent from her workstation and off-task while in the restroom. (ECF No. 13-1 at 13.) In other words, Plaintiff asserts that by not incorporating the time she would need for the additional restroom breaks into the RFC, the ALJ failed to properly determine the maximum RFC. (*Id*. at 14.) As a result, Plaintiff contends the matter should be remanded for further consideration of Plaintiff's RFC, including the impact of these symptoms, pursuant to Social Security Ruling (SSR) 96-8p. (*Id.*) Plaintiff points out that the VE testified that if the restroom breaks added up to more than ten percent of time off-task, she would be precluded from working any jobs in the national economy. In support of her argument, Plaintiff relies on a 2012 District of Oregon case, *Allen v. Astrue*, No. 6:11-cv-06322-KI, 2012 WL 4792412 (D. Or. Oct. 9, 2012), and a 2013 Western District of Washington Case, *Taylor v. Astrue*, No. C12-1069-MJP-MAT, 2013 WL 607436 (W.D. Wash. Jan. 28, 2013).

The Commissioner argues that Plaintiff mistakenly claims the RFC is incomplete because it does not address the time she needs for restroom breaks. (ECF Nos. 14/15 at 5.) The Commissioner asserts that Plaintiff cites no evidence in the record showing she needs unscheduled breaks due to her gastritis, much less breaks that would result in her being off task ten percent or more of the workday. (*Id*.) Instead, the Commissioner contends that the ALJ considered the entire record and assessed an RFC that adequately accommodated Plaintiff's gastritis by calling for proximity to the bathroom. (*Id*.) The Commissioner points out that the medical records show no comments regarding her bathroom usage or indicate that she required unscheduled breaks. (*Id*.)

In her reply, Plaintiff asserts that the record demonstrates that she consistently complained of frequent and urgent need to use the restroom. (ECF No. 17 at 3.) She argues it is not typical practice for a physician to observe a person's typical bathroom usage, and her medical records confirm consistent reports of abdominal pain and frequent, painful bathroom usage along with diagnostic testing consistent with irritable bowel disease. (*Id*. at 2.)

**2. Medical Evidence Re: Plaintiff's Intestinal Issues**

On March 30, 2011, she saw Dr. Paul Pilgram for stomach issues which included nausea, "major GI upset" and "normal to diarrhea." (AR 531.) She reported developing "epigastric abdominal pain"

while preparing to go to work the morning before, and could not go to work. (AR 531.) She was assessed with epigastric abdominal pain and diarrhea. (AR 532.) An abdominal ultrasound was recommended. (AR 532.)

On August 3, 2011, her lab test for inflammatory bowel disease was normal. (AR 522.) The tests showed that helicobacter pylori, celiac sprue and pancreatitis were also not responsible for her abdominal pain and diarrhea. (AR 523.) She was assessed with unspecified abdominal pain. (AR 523.)

On September 17, 2012, Plaintiff reported intestinal cramping. (AR 362.) She was advised to take probiotics for intestinal problems. (AR 363.) On September 24 and 28, 2012, she reported that her intestinal problems were improving with probiotics. (AR 364, 366.) On October 9, 2012, she reported bowel problems including feeling as if she had diarrhea and stomach cramps but then getting to the restroom and not having to go. (AR 413.) Tests for her abdominal issues were ordered. (AR 414.)

On November 6, 2012, she reported trouble eating and abdominal pain after eating. (AR 411.) She had lost twelve pounds since May 2012. (AR 411.) She was diagnosed with abdominal pain. (AR 412.) It was noted that she had a steroid responsive intestinal problem that might be a "Crohn's equivalent," though testing showed she was not consistent with inflammatory bowel disease. (AR 412-413.) A report from Dr. Pilgram on November 6, 2012, noted Plaintiff's abdominal pain and indicated that lab tests were ordered for Crohn's Disease and Ulcerative Colitis. (AR 517.) She was given a steroid pack to try to help with the pain after eating. (AR 517.) Records from Dr. Pilgram on December 3 and 19, 2012, noted possible Crohn's disease. (AR 407, 408.)

On March 11, 2013, Dr. Pilgram noted Plaintiff was at risk for Crohn's disease. (AR 402.) On May 13, 2013, Dr. Pilgram assessed her with diarrhea. (AR 435.) He noted that a colonoscopy to further investigate the possibility of Crohn's would be scheduled when she had insurance. (AR 435.) On the same date, Dr. Pilgram noted that her abdominal symptoms, which began in October 2012, were undiagnosed, though she showed markers that made her a high risk for Crohn's Disease. (AR 501.) He indicated that prednisone gave her only temporary relief from her symptoms. (AR 501.) Another report on that date stated that Plaintiff struggled to eat as she had severe periumbilical central abdominal pain, and prednisone was helpful. (AR 512.) At that point, Dr. Pilgram did not know the cause of her issues, and as such, did not expect the condition to improve in the foreseeable future. (AR 512.)

On April 9, 2013, she reported that peppermint oil in her coffee or hot chocolate seemed to help with her intestinal problems. (AR 508.)

On July 9, 2013, she reported intestinal problems improving with probiotics. (AR 496.) A colonoscopy was prescribed, and she was to continue probiotics. (AR 497.)

Dr. Pilgram filled out an RFC questionnaire on February 26, 2014. (AR 501-502.) His diagnoses for Plaintiff included possible Crohn's disease. (AR 501.) He stated that Plaintiff would need to take unscheduled breaks every hour for ten to thirty minutes during an eight-hour workday. (AR 501.)

On April 29, 2014, it was reported that she had symptoms of alternating diarrhea and constipation. (AR 563.) She was referred for a colonoscopy. (AR 564.)

She saw Dr. Paul Sheykhzadeh of Digestive Health Associates on September 8, 2014, regarding abdominal pain, irregular bowel pattern, rectal bleeding. (AR 571-72.) She described a two-year history of irregular bowel pattern with no bowel movements for several days followed by a day of diarrhea. (AR 571.) She admitted to frequent urgency, and frequent abdominal pain. (AR 571.) She underwent a colonoscopy and endoscopy as a result of chronic diarrhea and abdominal pain on October 6, 2014, and revealed hemorrhoids, a small hiatus hernia, and inflammation in the gastric antrum. (AR 565-567.) Biopsies were taken for evaluation of celiac disease. (AR 567.)

### 3. Plaintiff's Hearing Testimony

Plaintiff testified that her gastro-intestinal issues caused her to "either run[ ] to the bathroom all the time or … not … at all." (AR 61.) She said that week, for instance, she had "been in the bathroom more than [she had] been out." (AR 62.) She testified that her last job, which was a "phone job" ended in part because of her intestinal issues as she "could not get off the phone to use the bathroom or [she] would be penalized, it would affect [her] time. And it would actually affect [her] performance, and that would affect [her] pay." (AR 63.)

### 4. VE Testimony

The ALJ then took testimony from the VE, where the VE identified Plaintiff's past relevant work. (AR 67-68.) The ALJ posed a vocational profile with an individual of Plaintiff's age at the onset of disability, education and past work history, and asked whether a person with limitations including "on occasion [requiring] some proximity to a restroom" could perform the past relevant work. (AR 68-69.)

The VE testified that such individual could perform the tour guide and retail sales clerk past relevant work. (AR 69.) The VE also stated that such an individual could perform other work including storage facility rental clerk, parking attendant, and cashier in a self-service facility or kiosk. (AR 70.) Plaintiff's counsel then questioned the VE, and asked whether the jobs identified provided reasonable proximity to a restroom. (AR 71.) The VE testified that the tour guide and retail sales clerk positions would have reasonable proximity to a restroom. (AR 71.) Plaintiff's attorney then asked the VE, "regardless of how close the bathroom is…, how many unscheduled breaks is an employer going to tolerate no matter how close the bathroom is?" (AR 70.) The attorney and VE then engaged in the following discussion:

> VE: You know, if I understand your question would be how many breaks would be tolerated in -- how many breaks would be tolerated equated to time off-task, not performing work?"
> Attorney: Right.
> VE: And I would say not to exceed--10 percent or more would be excessive and would not be tolerated.
> Attorney: Okay.
> VE: 10 percent of the work -- maximum 10 percent of the workday.
> Attorney: Okay, so if someone was missing that much time, does the employer care how close the bathroom is?
> VE: No, no, we discussed it in terms of time off-task.
> Attorney: Right.
> VE: Off work.
> Attorney: Okay.

(AR 71-72.) The hearing then concluded. (AR 72.)

**5. ALJ's Decision**

The ALJ assessed Plaintiff as capable of performing light work with some additional limitations, including the need for "proximity to a restroom on occasion." (AR 30.) The ALJ pointed out that Plaintiff reported in April 2013 that gastro-intestinal issues caused her to never know when she would need to be in the bathroom and made it difficult for her to eat. (AR 30.) The ALJ again acknowledged Plaintiff's testimony that her gastrointestinal issues caused her to run to the bathroom. (AR 31.) The ALJ went on to describe Plaintiff's treatment concerning her intestinal issues. (AR 31-33.)

///

///

After recounting this treatment, the ALJ stated: "To account for the claimant's irregular bowel patterns and abdominal pain due to her gastritis and gastro-intestinal reflux disease, the undersigned incorporates the limitation that the claimant must have proximity to a restroom in her residual functional capacity." (AR 33.)

**6. Analysis**

RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

"In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Social Security Ruling (SSR) 96-8P, 1996 WL 374184 (July 2, 1996).

In the first case Plaintiff relies on, *Allen v. Astrue*, the ALJ accepted the testimony of the claimant's ex-boyfriend that the claimant needed immediate access to the restroom, but the ALJ did not discuss how many bathroom breaks would be needed in a workday. *See Allen*, 2012 WL 4792412, at * 10. There, the VE testified the claimant would not be able to work if she needed to use the restroom every thirty-minutes for five minutes at a time, on a daily basis. *Id.* The court found that "a functional limitation requiring continuous access to a restroom [was] insufficient to address Allen's need to *use* the restroom and the amount of time carved out from her workday to accommodate her need." *Id*. As such, the court remanded for the ALJ to consider this issue in the first instance.

In the second case cited by Plaintiff, the court acknowledged it was reasonable for the claimant to argue that a person with Crohn's disease does not decide when to go to the bathroom and that the decision should be remanded for the ALJ to consider the claimant's need for ready access to a bathroom and unscheduled breaks. *See Taylor*, 2013 WL 607436 at * 4. Ultimately, the court found that the claimant had failed to provide sufficient support for a functional limitation associated with his Crohn's disease, and did not remand on this basis.

Here, the ALJ acknowledged (and did not specifically discredit or reject) Plaintiff's testimony that her gastro-intestinal issues caused her to never know when she would need to be in the bathroom. Therefore, unlike *Taylor,* the ALJ here specifically noted there is support for a functional limitation of unscheduled bathroom breaks. The ALJ accounted for this by incorporating into the RFC a limitation that she be in close proximity to a restroom. Plaintiff's attorney asked the VE about what amount of time being off task due to taking unscheduled restroom breaks would be tolerated by an employer. The VE specifically testified that unscheduled breaks that equated to ten percent of the time being off task or not working would not be tolerated by an employer. The ALJ, however, did not address how much time Plaintiff would be off task as a result of taking unscheduled breaks due to her gastrointestinal issues.

The ALJ did not address this topic despite the VE's testimony that regardless of how close the restroom was, unscheduled breaks that equated to ten percent of the time being off-task or not working would not be tolerated by an employer, and Plaintiff's own testimony concerning her bowel problems, their unpredictability, and that her condition had required her to be in the bathroom more than she was out of it. The court agrees with the District of Oregon in *Allen* that the functional limitation assessed by the ALJ—close proximity to the restroom—does not adequately address this limitation. In other words, the ALJ did not sufficiently address how much time of a workday would be taken up by Plaintiff using the restroom during unscheduled breaks, and whether or not this would preclude employment. The court therefore recommends remand for further development of the record in this regard.

**C. Medical Opinion Evidence**

**1. Summary of Argument**

Plaintiff notes that the ALJ accorded "partial weight" to the opinion of Plaintiff's primary care physician, Dr. Pilgram, but gave great weight to the opinions of non-examining state agency consultants Dr. Susan Thobe and Dr. Kim Heaton. (ECF No. 13-1 at 14.)

Plaintiff argues that the opinions of Dr. Thobe and Dr. Heaton are "materially divergent on the issue of [RFC.]" (*Id*. at 15.) She asserts that Dr. Thobe opined that a consultative examination was required to establish the current severity of the impairments, and did not issue a RFC assessment. (*Id*.) There was no consultative examination before Dr. Heaton filed her report, which claimed that Plaintiff had the RFC for light work. (*Id*.) Plaintiff claims that these opinions cannot be reconciled, and therefore,

the ALJ's decision to afford them great weight is unsupported. (*Id*.)

Plaintiff further contends that the ALJ did not discuss that these opinions were based on an incomplete record that did not contain the subsequently submitted treating source opinion from Dr. Pilgram, and it is unclear whether a review of the full records would have altered their opinions, particularly Dr. Thobe, who said that a RFC assessment was needed for proper evaluation. (*Id*.)

The Commissioner argues that the ALJ properly afforded partial weight to Dr. Pilgram's opinions, and great weight to the opinions of Dr. Thobe and Dr. Heaton. (ECF Nos. 14/15 at 9-15.) The Commissioner points out that the ALJ explained that Dr. Pilgram's extreme limitations were at odds with evidence showing the pain responded to medication, were inconsistent with the normal physical examination findings in the treatment records, and were inconsistent with evidence that Plaintiff could engage in a variety of daily activities. (*Id*. at 11-12.)

The Commissioner contends that Dr. Thobe did not author the "consultative examination" section of the record that Plaintiff cites, and instead, Dr. Thobe's opinion is set forth in the "Case Analysis" section of the report and in that portion she did not state that any further examinations were required.

**2. Dr. Pilgram's Opinions**

On March 11, 2013, Dr. Pilgram completed a form indicating that Plaintiff had generalized muscle and joint pain, diarrhea, fatigue, migraines, with a history of steroid responsive arthropathy, serologic markers suggesting increased risk of Crohn's disease. (AR 399.) He opined that the condition was static and improvement could not be expected. (AR 405.) He further opined that she was limited to sitting and standing for thirty minutes, and could lift less than twenty pounds frequently. (AR 406.)

In an RFC questionnaire dated February 26, 2014, Dr. Pilgram indicated that he first started seeing Plaintiff in September of 2009 and then saw her for visits every one to three months. (AR 501.) His diagnoses included: steroid responsive arthropathy, possible Crohn's disease and fibromyalgia. (AR 501.) Her symptoms involved: generalized pain, joint pain, abdominal pain and diarrhea, migraines and sciatica. (AR 501.) He opined: she would need to recline or lie down in excess of typical breaks; she could walk zero blocks without pain; she could sit and stand for fifteen minutes at a time; she could sit and stand/walk for three hours in an eight-hour work day; she needs a job which permits shifting

positions at will from sitting, standing or walking; she would need a ten to thirty minute break every hour during an eight-hour workday; she could frequently lift/carry up to ten pounds, and occasionally lift/carry twenty pounds; she had limitations with respect to repetitive reaching and handling; she was likely to be absent from work more than four times a month; and, she was not capable of working an eight-hour day, five days a week on a sustained basis. (AR 501-502.)

### 3. Dr. Thobe's Opinion

Dr. Thobe's disability report is dated May 31, 2013. (AR 73-80, 81-88.)

She stated:

> Reviewed MER and agree with examiner's FOFAE. Clmnt has objective evidence to support MDI of migraine successfully treated with Topamax and symptoms suspicious for Crohn's per treating physician including arthropathy that is responsive to steroid treatment and chronic fatigue and diarrhea (no objective studies have been done to establish diagnosis per available MER) and there is no evidence of synovitis or deformity on exams of all extremities. Clmnt is awaiting insurance coverage before undergoing colonoscopy and resuming tx with Topamax but recent exams are normal and ADLs are active. TSO stating no lift greater than 20 pounds and sit/stand 30 minutes is not consistent with his completely normal PE and plan at visit in 3/13 so is not given controlling weight. Overall, findings consistent with NS.

(AR 77, 85.) As Plaintiff indicates, Dr. Thobe did not issue a functional assessment.

### 4. Dr. Heaton's Opinion

Dr. Heaton evaluated Plaintiff's records on reconsideration, and her report is dated October 8, 2013. (AR 91-102, 103-114.)

After reviewing the records (including subsequent follow up with primary care provider on July 9, 2013), Dr. Heaton found no evidence to support alteration of Dr. Thobe's assessment. (AR 95.) She stated:

> Review of previous MER and new MER still shows recurrent migraine headaches successfully treated with medications when she has health insurance coverage to cover the cost of the medications. Does not meet/equal any listing and is non-severe. Has steroid responsive arthropathy (possible seronegative rheumatoid arthritis with negative inflammatory markers) with subtle evidence of mild right lumbosacral radiculopathy on EMG with multiple visits for low back pain. TSO (Pilgram, 3/11/13) stating severe limitations of lifting and sitting/standing is not consistent with his own objective findings and isn't given controlling weight. This is severe. See assigned RFC. Has possible inflammatory bowel disease (Crohn's with genetic predisposition) without colonoscopy secondary to cost due to no insurance coverage. This is non-severe. Reviewed with Dr. Taggart.

(AR 96.) Dr. Heaton limited Plaintiff as follows: lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk and sit six hours in an eight-hour workday; climb ramps/stairs frequently; climb ladders/ropes/scaffolds occasionally; frequently balance; frequent stooping, kneeling, crouching and crawling. (AR 99-100.) Dr. Heaton opined Plaintiff could perform work at the light level. (AR 101.)

**6. The ALJ's Findings**

After providing a thorough summary of the medical records, the ALJ stated the following with respect to the medical opinions:

> The undersigned gives great weight to the opinions of state agency consultants Susanne Thobe, M.D. and Kim Heaton, M.D. limiting the claimant to light work with frequent balancing, stooping, kneeling, crouching, and crawling as well as frequent climbing of ramps and stairs. In addition, the undersigned finds that the claimant can frequently climb ladders, ropes and scaffolds. Drs. Thobe and Heaton are accepted medical sources who reviewed the claimant's medical records, and their opinions are consistent with the claimant's reports of a wide range of activities of daily living as well as with the limited examination findings of the claimant of the claimant's treating physicians and the effectiveness of medication in treating her symptoms.
>
> The undersigned gives partial weight to Dr. Pilgram's opinions. Dr. Pilgram's opinion that the claimant must lift less than 20 pounds frequently and can lift 10 pounds frequently and 20 pounds occasionally (Exhibits 6F at 10, 10F at 2) is consistent with Dr. Pilgram's treatment records, limited examination findings, and the responsiveness of the claimant's pain to steroid medications. In addition, the undersigned accounts for the claimant's allegations of continued pain in her joints and lower back by limiting her to light work in her residual functional capacity. However, Dr. Pilgram's opinions stating that the claimant was unable to meet the demands of competitive employment and would need to recline during a typical workday, can walk zero blocks without pain, needs to take unscheduled breaks every hour for ten to 30 minutes, requires the ability to shift positions at will, can stand and walk a total of three hours in a day, has limitations in using her hands, fingers, and arms, can sit and stand no more than 30 minutes each in a day, and would be absent more than four times each month are not supported by the preponderance of the medical and opinion evidence (Exhibits 6F at 10, 10F at 1-2, 11F at 12). These opinions are inconsistent with Dr. Pilgram's treatment records indicating that the claimant's arthritic pain responded to steroid medications and are inconsistent with Drs. Pilgram, Jenkins, and Narag's limited examination findings. These opinions are also inconsistent with the claimant's previously discussed reports of her activities of daily living, including her testimony that she drives to visit her relatives out of state in Utah and California.

(AR 33-34.)

/ / /

### 7. Analysis

First, the court will address Plaintiff's argument that the ALJ erred in assigning great weight to the consulting physicians' opinion because Dr. Thobe stated that a consultative examination was required but did not occur. As indicated above, the Commissioner argues that Dr. Thobe did not author this portion of the report. It is not entirely clear who stated in the form that a consultative examination was required (AR 84), but the Commissioner is correct that the case analyses section of the form, which is signed by Dr. Thobe, does not state that any further examination was required. Nor did Dr. Heaton state that a further consultative examination should be required in providing her assessment.

Second, Plaintiff argues that the ALJ erred in assigning great weight to these opinions because they did not consider Dr. Pilgram's February 2014 opinion and records from Plaintiff's April 2013 and April 2014 visits. The records post-date Dr. Thobe's report, and except for the April 2013 records, also post-date Dr. Heaton's report. In any event, the documents were made a part of the record and considered by the ALJ. The court finds that the ALJ accurately summarized Plaintiff's medical history and provided specific and legitimate reasons for assigning great weight to Dr. Thobe's and Dr. Heaton's opinions while assigning partial weight to Dr. Pilgram's opinions. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ found that the extreme limitations opined by Dr. Pilgram were unsupported by his own treatment records which indicated that the arthritic pain responded to steroid medications. The court has reviewed the medical records and finds that this conclusion is supported by substantial evidence in the record. Plaintiff complained of joint pain and intestinal issues, and Dr. Pilgram's records indicate that she received relief with both steroid treatment and the use of probiotics. (*See* AR 364, 407, 437, 438, 440, 448, 458, 461, 462, 465.)

In sum, the court does not conclude the ALJ erred in this regard.

### D. Step Four Determination

Finally, Plaintiff argues that the ALJ erred because the hypothetical question posed to the VE was incomplete, as the RFC failed to account for Plaintiff's limitations associated with gastritis and the need for unscheduled bathroom breaks. (ECF No. 13-1 at 16.)

To the extent the court found that the ALJ erred in failing to sufficiently address how much time of a workday would be taken up by Plaintiff using the restroom during unscheduled breaks, and whether

or not this would preclude employment, the court finds the ALJ erred in determining Plaintiff could perform past relevant work and other work at steps four and five. On remand, the court should develop the record and pose a hypothetical that completely takes into account Plaintiff's limitations in this regard.

**E. Conclusion**

The court finds that the ALJ erred in failing to sufficiently address how much time of a workday would be taken up by Plaintiff using the restroom during unscheduled breaks, and whether or not this would preclude employment. Therefore, the matter should be remanded.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING IN PART** Plaintiff's motion (ECF No. 13) and **REMANDING** this matter for further development consistent with this Report and Recommendation; and, **DENYING** the Commissioner's cross-motion (ECF No. 14).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: July 12, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE